PEOPLE v BROWN

Docket No. 56326. Argued May 5, 1976 (Calendar No. 13).—Decided
December 31, 1976. Rehearing denied 400 Mich 952.

Otis Brown was convicted by a jury in Lenawee Circuit Court,
Rex B. Martin, J., of assault with intent to commit murder.
The defendant had filed a notice of intention to claim the
defense of insanity and submitted to examination by a psychia-
trist appointed by the court at the request of the people. At
trial defendant testified he could not remember the assault
charged because of intoxication by drugs and alcohol and
claimed that he had affection for the victim, a woman, but did
not present evidence of his claim of insanity. A defense psychia-
trist testified that because of the defendant's amnesia, he could
not form an opinion on the defendant's sanity at the time of
the shooting, but that he believed that the amnesia was the
result of the ingestion of drugs and alcohol. The prosecution's
expert witness-psychiatrist testified over objection that the
defendant had stated during his psychiatric examination that
he did not have affection for the victim, and that he had not
been drinking or taking drugs before the assault. The expert
witness also testified that in his opinion the defendant's amne-
sia was the manifestation of a psychological defense mecha-
nism. The Court of Appeals, J. H. Gillis, P. J., and Allen and
Elliott, JJ., affirmed per curiam (Docket No. 16376). Defendant
appeals. *Held:*

In this truth-ascertaining process, the people had at their
disposal the testimony of their psychiatrist contradicting the

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 5, 6, 8] 21 Am Jur 2d, Criminal Law §§ 48, 53.
  31 Am Jur 2d, Expert and Opinion Evidence §§ 85–87.
  81 Am Jur 2d, Witnesses §§ 596, 597.
  Validity and construction of statutes providing for psychiatric
  examination of accused to determine mental condition. 32 ALR2d
  434.
[2] 81 Am Jur 2d, Witnesses § 30 *et seq.*
[3, 5, 8] 81 Am Jur 2d, Witnesses §§ 523, 524, 527.
[4] 75 Am Jur 2d, Trial §§ 758, 760.
[7] 75 Am Jur 2d, Trial § 573 *et seq.*

factual basis of the new defense with information legally obtained. The defendant's statements to the people's expert witness were prior statements which were inconsistent with his testimony at trial, and, therefore, were admissible for the purpose of impeachment. A criminal defendant has the privilege to testify in his own defense or to refuse to do so, but the privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, the defendant was under an obligation to testify truthfully and accurately, and the prosecution has the opportunity to utilize the traditional truth-testing devices of the adversary process, such as cross-examination and impeachment of the defendant.

Affirmed.

Justice Levin, with Chief Justice Kavanagh and Justice Williams concurring, would reverse and grant a new trial because of error in instructions to the jury. They agreed that the testimony of the people's psychiatrist was admissible, but for a different reason: the statements he attributed to the defendant were material to the basis of his opinion concerning the defendant's mental condition and were responsive to factual testimony, also based on an interview with the defendant, of the defense psychiatrist. The statements were not admissible as prior inconsistent statements for impeachment purposes or as admissions because the waiver of the privilege against self-incrimination in making them is conditional, and if the defendant does not raise the issue of his sanity or mental condition and call an expert witness, the predicate for the waiver is gone.

The instruction to the jury was in error because it was tantamount to an instruction that as a matter of law the use of a deadly weapon implies the requisite felonious intent. The law does not imply malice where a deadly weapon is used; it is a permissible inference, not a presumption of law.

55 Mich App 124; 222 NW2d 58 (1974) affirmed.

OPINION OF THE COURT

1. CRIMINAL LAW—CONSTITUTIONAL LAW—SELF-INCRIMINATION—EVIDENCE—PSYCHIATRIC EXAMINATION.

A defendant's right against self-incrimination was not violated by allowing a court-appointed psychiatrist to testify in rebuttal to testimony of the defendant that he suffered from amnesia induced by alcohol and drugs ingested at the time of the crime and that he had affection for the victim where the defendant had undergone examination by court order because he had given notice of the defense of insanity but had not raised the

issue of insanity at trial, and where the psychiatrist's testimony was offered to impeach the defendant's testimony as a prior inconsistent statement or as rebuttal to testimony by the defendant's expert witness.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—SELF-INCRIMINATION— RIGHT TO TESTIFY.

A criminal defendant is privileged to testify in his own defense, or to refuse to do so; but that privilege cannot be construed to include the right to commit perjury.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—DEFENDANT TESTIFYING— CROSS-EXAMINATION—IMPEACHMENT.

A criminal defendant who voluntarily takes the stand in his own defense is under an obligation to testify truthfully and accurately; the prosecution, therefore, may utilize the traditional truth-testing devices of the adversary process, such as cross-examination and impeachment of the defendant.

DISSENTING OPINION

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

4. HOMICIDE—ASSAULT WITH INTENT TO COMMIT MURDER—DANGEROUS WEAPON—PERMISSIBLE INFERENCES—INSTRUCTIONS TO JURY.

*Instructions to the jury in a trial for assault with intent to commit murder that the requisite intent could be "presumed" from the circumstances and that the willful use of a dangerous weapon is "almost universally recognized as showing a felonious intent" are erroneous in categorizing intent as a presumption rather than a permissible inference.*

5. CRIMINAL LAW—EVIDENCE—PSYCHIATRIC EXAMINATION—IMPEACHMENT.

*Evidence obtained by the people during a psychiatric interview to which the defendant is required to submit that would not be admissible as part of the people's case-in-chief would not be admissible for purposes of impeachment.*

6. CRIMINAL LAW—EVIDENCE—PSYCHIATRIC EXAMINATION—EXPERT OPINION.

*Testimony for the prosecution by a psychiatrist concerning statements made to him was admissible where the statements the expert witness attributed to the defendant were material to the basis of his opinion concerning the defendant's mental condition and were responsive to factual testimony, also based on an*

*interview with the defendant, of the psychiatrist who testified for the defendant.*

7. CRIMINAL LAW—INSTRUCTIONS TO JURY.

*A trial judge has a responsibility to insure that cases are presented to the jury in an intelligent manner so that they may have a clear and correct understanding of what it is they are to decide; an erroneous or misleading charge denies the defendant the right to have a properly instructed jury pass upon the evidence.*

8. CRIMINAL LAW—EVIDENCE—CASE-IN-CHIEF—REBUTTAL.

*Evidence excluded from the people's case-in-chief under a prophylactic rule may not, in general, be used for rebuttal.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Harvey A. Koselka,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

*State Appellate Defender Office* (by *Kathleen M. Cummins)* for defendant.

LINDEMER, J. On the morning of March 10, 1972, defendant broke into the home of an estranged girlfriend, Rena Smith, and shot her twice in the head. In November of that year, he was tried on the charge of assault with intent to commit murder, MCLA 750.83; MSA 28.278.

Defendant testified at trial that anxiety over the loss of custody of his son combined with the ingestion of various amounts of alcohol and unknown drugs prevented him from forming the required specific intent. Moreover, he claimed affection for the victim. Defendant did not deny the commission of the crime but claimed that he could not recall its occurence because of amnesia.

A defense psychiatrist testified. He related that the defendant had initially sought the psychiatric examination to establish an insanity defense. Those plans were frustrated by the defendant's

amnesia. The doctor concluded that defendant was unable to recall the facts surrounding the shooting, so he could not form an opinion on the issue of defendant's sanity at the time of the shooting.

To support the intoxication defense, defense counsel attempted to pose several hypothetical questions to the psychiatrist about the effect that quantities of drugs and alcohol might have had on defendant. These attempts were unsuccessful, but the psychiatrist did state his belief that defendant's amnesia was the result of ingestion of drugs and alcohol.

When the defense motion for a psychiatric examination of defendant was granted, the prosecution was also granted a psychiatric examination. After the defense had rested, the prosecutor sought to endorse his psychiatrist for rebuttal. The endorsement was allowed over the defense objection, the trial judge saying:

"The defense of insanity actually hasn't been offered. Now, I think the doctor can testify this afternoon to rebut allegations or claims made by your client as to factual matters. He can't testify as to the defendant's sanity or insanity because I don't think there's any evidence on that."

The prosecution's psychiatrist testified that during the psychological interview of the defendant, the defendant indicated that he had not been drinking prior to the incident for about 24 hours, that he had not recently consumed any drugs, and that he had no specific feelings of affection for the victim. The prosecution's psychiatrist also testified that he believed defendant was, indeed, suffering from amnesia but that the amnesia was a defense mechanism formed after the commission of the crime rather than a result of the ingestion of

drugs and alcohol. These responses were in conflict
with the testimony defendant and his psychiatrist
had already given concerning his intoxication,
ingestion of drugs, and his affection for the victim.

The jury convicted defendant as charged and the
judge sentenced him to a term of 14 to 60 years in
prison. The Court of Appeals affirmed the convic-
tion. 55 Mich App 124; 222 NW2d 58 (1974). We
granted leave in order to consider the propriety of
the prosecution's psychiatrist's rebuttal testimony.

In *People v Martin,* 386 Mich 407; 192 NW2d
215 (1971), the Court addressed the question of the
right of the people to obtain a psychiatric evalua-
tion of defendant when a notice of intention to
claim the defense of insanity has been filed. The
Court reasoned that if the people are unable to
obtain a psychiatric evaluation of the defendant, a
plea of not guilty by reason of insanity would
practically compel a verdict of not guilty by reason
of insanity since the people would have no means
of meeting and overcoming the defense. Defendant
Brown raised that defense here but then aban-
doned it, complicating the issue.

Brown's psychiatrist, testifying as to the matter
of amnesia, expressed his opinion that it was
alcohol and drug induced and thereby buttressed
defendant's claimed defense of intoxication as a
means of avoiding the requisite element of intent.

In this truth-ascertaining process, the people
had at their disposal the testimony of their psychi-
atrist contradicting the factual basis of the new
defense. No argument is made that the people's
psychiatrist obtained his information other than
legally. The issue is whether that information can
be used where the defendant does not raise the
insanity defense at trial.

Defendant's reliance on *People v Stevens,* 386

Mich 579; 194 NW2d 370 (1972), is misplaced. In *Stevens* the testimony of the psychiatrist was not used either as a prior inconsistent statement or as rebuttal testimony to defendant's psychiatrist.

The rationale of *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), leads us to conclude that this expert witness testimony was proper on the theory of impeachment by prior inconsistent statement. In *Harris,* statements allegedly made by the petitioner were inadmissible under the holdings of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and were not used in the prosecution's case-in-chief. The Court said, however:

> "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States v Knox,* 396 US 77 [90 S Ct 363; 24 L Ed 2d 275] (1969); cf. *Dennis v United States,* 384 US 855 [86 S Ct 1840; 16 L Ed 2d 973] (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment." *Harris, supra,* at 225–226.

Defendant's statements to the people's psychiatrist were clearly prior inconsistent statements to those he made before the jury. They would be admissible for impeachment purposes here under the rationale of *Harris.*

We note that by 1975 PA 180, the Legislature enacted the following section to the Code of Criminal Procedure:

"Statements made by the defendant to personnel of the center for forensic psychiatry or to any independent examiner during an examination shall not be admissible or have probative value in court at the trial of the case on any issue other than his mental illness or insanity at the time of the alleged offense." MCLA 768.20a(5); MSA 28.1043(1)(5).

This statute in no way influenced our decision in this case. This defendant, tried nearly three years prior to the enactment of this statute, cannot avail himself of its protection.

Defendant's conviction is affirmed.

COLEMAN, FITZGERALD, and RYAN, JJ., concurred with LINDEMER, J.

LEVIN, J. *(for reversal and a new trial).* We would reverse the defendant's conviction and remand for a new trial because of instructional error, an issue not considered in our colleague's opinion although raised and preserved.

Brown was convicted of assault with intent to commit murder.[1] The evidence showed use of a gun.

The judge instructed the jury that intent to commit murder was an element of the offense, and that the requisite intent could be "presumed" from the circumstances and the use of "a dangerous weapon and in such a manner as an inquiring mind can come to no other conclusion than that the death of the victim was intended" and that the willful use of a deadly weapon is "almost universally recognized as showing a felonious intent". The instruction was erroneous in categorizing intent as a presumption of law rather than a permissible inference.

---

[1] MCLA 750.83; MSA 28.278.

We agree with our colleague, for different reasons, that the testimony of the people's psychiatrist was admissible and that at a retrial, in similar circumstances, it would again be admissible.

The testimony of the people's psychiatrist was not admissible simply because the sanity issue had been raised by Brown. Evidence, obtained by the people during a psychiatric interview to which the defendant is required to submit, that would not be admissible as part of the people's case-in-chief would not be admissible for purposes of impeachment.

We would predicate the admissibility of the psychiatrist's testimony on the ground that the statements he attributed to Brown were material to the basis of his opinion concerning Brown's mental condition and were responsive to factual testimony, also based on an interview with Brown, of the psychiatrist who testified for Brown.

I

Before the instructions were given the defendant's counsel objected to the murder with intent instruction on the ground that it is "so incredibly complicated it's practically impossible to follow". We think this sufficiently preserved the deficiency which we note.

The following is the judge's instruction on intent:

"In prosecution for assault with intent to commit murder it is immaterial whether the murder intended, if consummated would have resulted in murder in the first or second degree. You should first deliberate to determine whether or not the defendant was guilty under the evidence and these instructions of an assault with intent to commit the crime of murder.

"Murder, as I have told you, is the unlawful killing of a human being with malice. You are instructed that malice means a wicked intent to do an injury. It may be express or implied malice. Express malice in cases of wilful killing of a human being exists where one acts with a sedate, deliberate mind and formed design to kill another which design is evidenced by acts and conduct and external circumstances showing that design. Implied malice is such malice as is inferred by law from deliberate and cruel acts, presumed from the circumstances, though no particular enmity can be proven. Malice aforethought in the charge of murder means the killing must be done with a wicked intent previously formed to take life. Malice is here used in the technical sense, including not only anger, hatred and revenge, but every other wilful and unjustifiable motive prompted by a wicked mind. It's not confined to a particular ill will, but is intended to denote an action flowing from a wicked, depraved, and corrupt motive where the act has been attended with such circumstances as carry in them a plain indication of a mind, regardless of social duty, fatally bent upon mischief.

"In this respect, you are instructed it is not material as to the length of time this wicked motive existed, length of time this malice existed prior to the undertaking, if you find malice did exist. Malice aforethought does not imply prudent deliberation or the lapse of considerable time between the formation and the execution of the intent to take life, but rather denotes purpose and design. It means malice existing for any length of time before the act as long as it was a moving cause of that act. You will understand, of course, it's not—it is for you to determine from all the evidence in this case and these instructions whether or not there was any act by this defendant or any such intention in this defendant's mind.

"In some instances some proof of the intent is furnished by the manner of the act itself, as when the killing or attempt to kill is done with a deadly weapon or a dangerous weapon and in such a manner as an inquiring mind can come to no other conclusion than that the death of the victim was intended. In such cases the law presumes every person to intend the usual

consequences which follow the use or means employed and the manner in which they are employed when it is not justified or excused. The wilful use of a deadly weapon without excuse or provocation in such a manner as to imperil life, while not recognized as being sufficient proof of malice if standing alone is almost universally recognized as showing a felonious intent, provided you do not find the defendant's acts were excusable or justifiable in accordance with these instructions. Whether malice, which the law speaks of and which I have endeavored to explain as being an element of murder, was present in this case, is to be found out by you by an examination of all the evidence in this case throwing light on this question. The actual intent to commit murder must be proved and under such conditions and circumstances as would make the killing murder. However, you can't look into a man's mind and know his motive and intentions. You have a right to infer his intent from the evidence in the case if you find the evidence warrants it beyond a reasonable doubt based upon these instructions. Considering the question of intent you have a right to take into consideration the nature of the defendant's acts constituting the assault, if you find there was an assault, and the temper or disposition of the mind with which any such acts were apparently performed, and whether the instrument and means used were naturally adapted to produce death, and the defendant's conduct and declarations prior to, and at the time, and after any such assault and, in fact, all circumstances in the case calculated to throw light upon the intention with which an assault, if any, was made."

This Court has recently "reaffirmed the responsibility of the trial judge to insure that cases are presented to the jury in an intelligent manner ' "so that they may have a clear and correct understanding of what it is they are to decide." '[2] An

---

[2] This footnote is from the Court's opinion in *People v Martin,* 392 Mich 553, 562; 221 NW2d 336 (1974), *viz.:*

"*People v Townes,* 391 Mich 578, 587; 218 NW2d 136 (1974), quoting from *People v Murray,* 72 Mich 10, 16; 40 NW 29 (1888)."

erroneous or misleading charge denies defendant the right to have a properly instructed jury pass upon the evidence.[3]" *People v Martin,* 392 Mich 553, 560–562; 221 NW2d 336 (1974). Similarly see *People v Pepper,* 389 Mich 317; 206 NW2d 439 (1973).

In *Martin* we held it was "grievous error" to instruct the jury "as a matter of law" that "if a man kills another suddenly without any warning, where a deadly weapon is used the law implies malice and the killing is murder".[4]

In remanding for a new trial, we said that "malice [intent to kill] was erroneously categorized as a presumption of law rather than a permissible inference".

In this case the judge instructed the jury that "some proof of intent is furnished" when the attempted killing "is done with a deadly weapon or a dangerous weapon and in such a manner as an inquiring mind can come to no other conclusion than that the death of the victim was intended. In such cases the law presumes every person to intend the usual consequences which follow the use" of the means employed (a weapon); while use of a weapon was not sufficient proof of malice "if standing alone is almost universally recognized as showing a felonious intent".

---

[3] This footnote is from the Court's opinion in *People v Martin, supra, viz.:*

"*People v Visel,* 275 Mich 77; 265 NW 781 (1936); *People v Mac-Pherson,* 323 Mich 438; 35 NW2d 376 (1949)."

[4] "This portion of the instructions effectively eliminated the verdict of manslaughter from the jury's consideration. The court charged *as a matter of law* that the use of a deadly weapon *implies* malice. The jury was left with no alternative other than to logically deduce that since a deadly weapon was used, the defendant must be guilty of murder. The law does not imply malice where a deadly weapon is used. Michigan has long ago considered malice a permissible inference to be drawn by the jury rather than a presumption of law." *People v Martin, supra,* p 561.

The charge was tantamount to an instruction as a matter of law that use of a deadly weapon implies the requisite felonious intent. "The jury was left with no alternative other than to logically deduce that since a deadly weapon was used, the defendant must be guilty [of assault with intent to commit murder]. The law does not imply malice where a deadly weapon is used. Michigan has long ago considered malice a permissible inference to be drawn by the jury rather than a presumption of law." *People v Martin, supra,* p 561.

## II

A psychiatrist called by Brown testified that, during an interview, he learned that Brown had ingested drugs and alcohol shortly before committing the offense, and expressed the opinion that Brown's amnesia was caused by the resulting intoxication.

The testimony of the people's psychiatrist was that during an interview with him Brown said that he consumed no alcohol or drugs before committing the offense. The psychiatrist was of the opinion that Brown's amnesia was a "defense mechanism".

The factual testimony of the people's psychiatrist was thus in direct response to the testimony of Brown's psychiatrist regarding the factual predicate for his opinion.

The people's psychiatrist also testified that Brown had "indicated that he did not have much interest" in the victim. We need not consider whether a defendant's affection or disaffection for the victim is generally material to his mental condition at the time of the offense. The testimony

of the people's psychiatrist was, again, responsive
to the testimony of Brown's psychiatrist who had
testified that Brown expressed no malice toward
the victim. Both psychiatrists apparently thought
that Brown's attitude toward the victim was mate-
rial to his amnesia and ability to reason.

We conclude that in these circumstances the
judge did not err in admitting the testimony of the
people's psychiatrist. The factual testimony of the
people's psychiatrist was responsive to the testi-
mony of Brown's psychiatrist and appears material
to the issue of Brown's mental condition at the
time of the offense.

We note the recent amendment of the statute,
applicable in cases where the offense was commit-
ted after the amendment's effective date, limiting
the use of statements made by a defendant to an
examiner for the state.[5]

## III

Our colleague's opinion states that the rationale
of *Harris v New York,* 401 US 222; 91 S Ct 643; 28
L Ed 2d 1 (1971), supports the conclusion that the
testimony of the people's psychiatrist was admissi-
ble as "impeachment by prior inconsistent state-
ment".

Evidence excluded from the people's case-in-chief
under a prophylactic rule may not, in general, be

---

[5] 1975 PA 180, amending the provisions of the Code of Criminal
Procedure relating to the defense of insanity bars the use in court of
statements made by a defendant to personnel of the Center for
Forensic Psychiatry or to an independent examiner "on any issues
other than his mental illness or insanity at the time of the alleged
offense" (MCLA 768.20a; MSA 28.1043).

See *People v Stevens,* 386 Mich 579, 585; 194 NW2d 370 (1972);
*People v Martin* 386 Mich 407, 428; 192 NW2d 215 (1971), *cert den
sub nom Lewis v Michigan* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342
(1972); *United States v Albright,* 388 F2d 719, 725 (CA 4, 1968).

used for rebuttal.[6] In *People v Reed,* 393 Mich 342, 355; 224 NW2d 867 (1975), this Court distinguished *Harris v New York,* saying that it "relate[d] to impeachment because of failure to give *Miranda* warnings" and indicated that *Harris* does not authorize the use in other situations of evidence otherwise inadmissible:

"In order to deter the police from breaking the law, statements made prior to the *Miranda* warnings are unusable to prove the elements of the offense charged. However, such statements may still be used for impeachment purposes if otherwise trustworthy. Involuntary confessions, on the other hand, may never be used, both because the police broke the law but more importantly because an involuntary confession is always of questionable 'trustworthiness.' "

In *Kidd v State,* 366 A2d 761, 765, 767 (Md Ct Spec App, 1976), the Maryland Court of Special Appeals similarly declared:

"*Miranda,* however, is not coextensive with the fundamental constitutional right under the Fifth and Fourteenth Amendments against compelled self-incrimination. The erosion or demeaning of *Miranda* by no means implies the erosion or demeaning of the fundamental constitutional right itself. That right stands as it stood before *Miranda* was ever promulgated. Neither *Harris v New York [supra]* nor *Oregon v Hass* [420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975)] has eroded it in any sense.

* * *

---

[6] *Agnello v United States,* 269 US 20, 35; 46 S Ct 4; 70 L Ed 145 (1925); *Inge v United States,* 123 US App DC 6, 10; 356 F2d 345, 349 (1966); *State v Brewton,* 247 Or 241; 422 P2d 581 (1967), *cert den* 387 US 943; 87 S Ct 2074; 18 L Ed 2d 1328 (1967); *Commonwealth v Padgett,* 428 Pa 229; 237 A2d 209 (1968); *Harrison v United States,* 128 US App DC 245; 387 F2d 203 (1967); *State v Wellman,* 45 Ohio App 2d 264; 344 NE2d 146 (1975); 3 Wigmore on Evidence (Chadbourn rev), § 821, pp 314–319.

"It is now undisputed that a violation of the Fifth Amendment right against compelled self-incrimination can trigger the 'fruit of the poisonous tree' doctrine. [Citations omitted.] It is also undisputed that once the 'fruit of the poisonous tree' doctrine comes into play, the use of a tainted 'fruit' would be barred for all purposes, for impeachment purposes in rebuttal just as surely as for more directly inculpatory purposes in the case in chief."

A defendant who gives notice of an insanity defense is generally required to submit to a psychiatric examination. His presence at the interview is involuntary. In responding to his interrogator, the defendant waives—but only · conditionally—his privilege against self-incrimination; the waiver does not go beyond the reason for requiring his appearance for examination.

The examination is required so that if the defendant does call an expert witness to testify concerning his mental condition the people can offer responsive expert testimony without delaying the trial to interview the defendant. If, however, the defendant does not call an expert witness the predicate for waiver of the privilege is gone.

The policy considerations here are similar to those in a case where a defendant pleads guilty and is called upon to relate the facts surrounding the commission of the offense to establish a factual basis for acceptance of his plea. If the plea is not accepted or is set aside his statements are not admissible at trial.[7] The evidence is excluded to

---

[7] *See People v Trombley,* 67 Mich App 88; 240 NW2d 279 (1976), *leave den* 396 Mich 861 (1976), holding that a withdrawn plea of guilty may not be used for impeachment purposes.

The weight of authority is that a plea of guilty that has been set aside or withdrawn may not be used for impeachment purposes. *See People v Spitaleri,* 9 NY2d 168; 212 NYS2d 53 (1961); *State v Reardon,* 245 Minn 509; 73 NW2d 192 (1955); *Ely v Haugh,* 172 NW2d 144 (Iowa, 1969). *Similarly see* FR Crim Proc 11(e)(6).

Cases holding that a plea that has been withdrawn or set aside may

facilitate the administration of justice by encouraging defendants to state the facts fully and honestly and without fear that they will be offered in evidence against them.

In this case, conducting the interview in advance of trial, before it is known whether the defendant will actually offer psychiatric testimony, facilitates the administration of justice by enabling the people to prepare to meet testimony that may be offered by an expert witness called by the defendant. Limiting the waiver of the privilege and making it coextensive with the purpose of the psychiatric interview is consistent with the objective of encouraging defendants to state fully and honestly the facts necessary to form an expert opinion on mental condition. If, however, opinion testimony is not offered by the defendant, evidence disclosed at the psychiatric interview may not be used by the people.[8]

In sum, Brown's statements to the people's psychiatrist were not admissible as prior inconsistent statements for impeachment purposes or as admissions.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

---

not be used at the trial, but not considering the precise question of whether it may be used for impeachment purposes, include *People v Street,* 288 Mich 406; 284 NW 926 (1939); *Kercheval v United States,* 274 US 220, 224; 47 S Ct 582; 71 L Ed 1009 (1927).

The American Bar Association Standards provide:

"A plea of guilty or nolo contendere which is not accepted or has been withdrawn should not be received against the defendant in any criminal proceedings." ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968), § 2.2, p 59.

[8] *See* fn 5, *supra.*