PEOPLE v POWELL

1. EVIDENCE—CRIMINAL LAW—POLYGRAPH TESTS—ADMISSIBILITY OF
   RESULTS—PRESENCE OF COUNSEL.

   Statements made by a defendant to a polygraph examiner prior
   to trial and when the defendant's counsel was not present are
   admissible to impeach the defendant's trial testimony, even
   though neither the fact of taking the polygraph test nor the
   results therefrom are admissible, where: (1) defendant's counsel
   requested the polygraph test and advised the defendant to
   cooperate with the examiner, (2) defendant's mother signed a
   polygraph examination release form for the defendant, her 16-
   year-old son, prior to the polygraph test, (3) defendant was read
   his *Miranda* rights prior to the polygraph test, and (4) no
   reference was made to the results of the polygraph examina-
   tion at the trial.

2. WITNESSES—CRIMINAL LAW—CONSTITUTIONAL LAW—EVIDENCE—
   SELF-INCRIMINATION—RIGHT TO TESTIFY—PERJURY.

   A criminal defendant is privileged to testify in his own defense,
   or to refuse to do so, but that privilege cannot be construed to
   include the right to commit perjury.

3. WITNESSES—CRIMINAL LAW—CONSTITUTIONAL LAW—EVIDENCE—
   DEFENDANT AS WITNESS—IMPEACHMENT—CROSS-EXAMINATION.

   A criminal defendant who voluntarily takes the stand in his own
   defense is under an obligation to testify truthfully and accu-
   rately; the prosecution, therefore, may utilize the traditional
   truth-testing devices of the adversary process, such as cross-
   examination and impeachment of the defendant.

Appeal from Genesee, Harry B. McAra, J. Sub-
mitted March 3, 1977, at Lansing. (Docket No.
26526.) Decided June 8, 1977.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 831.
[2, 3] 81 Am Jur 2d, Witnesses §§ 63, 64.

Roscoe D. Powell, Jr., was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Richard P. King,* for defendant.

Before: DANHOF, C. J., and T. M. BURNS and J. E. McDONALD,* JJ.

PER CURIAM. Defendant was charged with second-degree murder, MCLA 750.317; MSA 28.549, and following a jury trial was convicted on June 30, 1975. On September 3, 1975, defendant was sentenced to a term of 12 to 25 years in prison. He appeals as of right.

Although conflicting in some respects, the evidence produced at trial indicated that there had been an altercation during the afternoon of the shooting and that some time after that defendant was threatened with a shotgun by either the decedent John Smith or a friend of the decedent. Defendant, a 16-year old, returned to his home and told his father, who proceeded to go talk to Smith about the threats. After obtaining his mother's pistol, defendant followed his father to the house where Smith was sitting on a porch with a shotgun either in his hands or within reach. Defendant shot Smith, causing his death. At trial defendant relied on the defense of self-defense.

On appeal, defendant contends that reversible error occurred when statements made by him

---

* Circuit judge, sitting on the Court of Appeals by assignment.

during a polygraph examination given in the absence of counsel were brought out at trial.

On September 5, 1974, a polygraph examination arranged by defense counsel was given to defendant by Flint Police Officer Robert Florida. During the examination defendant told the officer that Smith had raised his shotgun about four inches from the *floor* of the porch when he (defendant) shot him.

While testifying on his own behalf during trial, defendant stated that at the time he shot Smith, Smith was holding the shotgun about four inches above the *banister* of the porch, aiming at him. On cross-examination, the prosecutor asked defendant the following:

"Q Witness, getting back to those critically important four inches, now that you have had a little opportunity to think, do you recall why it is important today to tell us that he raises [sic] the gun four inches out from the banister? Do you remember why that's important?

"A I couldn't tell you.

"Q Okay. Do you recall, witness, On September 5th, 1974, talking to Sergeant Robert Florida and other police officers over at the Flint Police Department?

"A I was talking to some, but I couldn't tell you who all I was talking to because I don't know their name [sic].

"Q All right. Whether you remember the names or not, do you recall what you told them?

"A No.

"Q I'll show you, witness, what I believe you will recognize as a report of that conversation. I have underlined for your benefit some three lines of it. Ask if you'd read that to see if it refreshes your recollection.

"Does that help you remember, witness?

"A No.

"Q No? Let me ask you then if it's not true that on that particular date and time you told the officers that as you stood down there Mr. Smith started to reach for

the gun; that you believed he had gotten it in one hand, not two, and that he had raised it perhaps four inches off the floor? Do you remember telling him that now?

"A I said four inches from the bench. The bench.

"Q I see. That's not what you just read, is it, however.

"A No."

The polygraph examination was requested by defense counsel. Defense counsel advised defendant to cooperate with the examiner. Prior to the examination, defendant's mother signed a polygraph examination release form. At the commencement of the examination defendant was read his *Miranda*[1] rights.

Although there was no testimony given by the polygraph examiner in this case as to the prior inconsistent statement, the case at bar is closely analogous to *People v Brown,* 399 Mich 350; 249 NW2d 693 (1976). Charged with assault with intent to commit murder in the shooting of his estranged girl friend, Brown testified at trial that he was prevented from forming the requisite specific intent due in part to intoxication.

During rebuttal, a psychiatrist testifying for the prosecution asserted that, during a psychological interview, the defendant indicated that he had not been drinking prior to the incident for about 24 hours and that he had not recently consumed any drugs. In answering the defendant's claim that the expert's testimony was erroneously admitted, the Supreme Court answered:

"The rationale of *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), leads us to conclude that this expert witness testimony was proper on the theory

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

of impeachment by prior inconsistent statement. In *Harris*, statements allegedly made by the petitioner were inadmissible under the holdings of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and were not used in the prosecution's case-in-chief. The Court said, however:

" 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States v Knox*, 396 US 77 [90 S Ct 363; 24 L Ed 2d 275] (1969); *cf. Dennis v United States*, 384 US 855 [86 S Ct 1840; 16 L Ed 2d 973] (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.' *Harris, supra,* at 225–226.

"Defendant's statements to the people's psychiatrist were clearly prior inconsistent statements to those he made before the jury. They would be admissible for impeachment purposes here under the rationale of *Harris.*" *People v Brown, supra,* at 356.

The statements made to the polygraph examiner in the case at bar were similarly admissible for impeachment purposes.

While it is true that neither the fact of the taking of a polygraph examination nor the results of such an examination are admissible into evidence, *People v Rodgers*, 66 Mich App 658, 660; 239 NW2d 701 (1976), there was no reference to the polygraph examination in this case. *Cf. Roberts v State*, 195 So 2d 257 (Fla App, 1967), and *People v Porter*, 136 Cal App 2d 461; 288 P2d 561 (1955).

Affirmed.