PEOPLE v CHAMPION

Docket No. 43108. Submitted February 7, 1980, at Grand Rapids.—
    Decided April 22, 1980.

Defendant, Christopher Lee Champion, was convicted of second-
    degree murder in the Kalamazoo Circuit Court, Patrick H.
    McCauley, J. Defendant appeals raising several issues. *Held:*

1. Out-of-court statements of a declarant are admissible
    against a defendant where there existed a concert of action or
    conspiracy between defendant and the declarant and the state-
    ments were made while the common scheme or plan was still
    in effect. Evidence, independent of the statements, connecting
    the defendant with the conspiracy must be presented for the
    statements to be admissible.

2. Reversible error does not result from failure to give
    cautionary instructions to the jury in response to a prosecutor's
    closing argument where appropriate instructions would have
    cured any prejudice and instructions were not requested.

3. Where defense counsel fails to object to improper cross-
    examination by the prosecutor, a conviction will only be re-
    versed when necessary to prevent a miscarriage of justice.

4. An aider and abettor may be indicted, tried and, on
    conviction, punished as a principal.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — HEARSAY — OUT-OF-COURT STATE-
    MENTS — CONCERT OF ACTION — CONSPIRACY — RULES OF
    EVIDENCE.

Out-of-court statements of a declarant are admissible against a
    defendant where there existed a concert of action or conspiracy
    between defendant and the declarant and the statements were
    made while the common scheme or plan was still in effect;
    evidence, independent of the statements, connecting the defen-

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Conspiracy § 46 *et seq.*
[2] 75 Am Jur 2d, Trial §§ 317, 577, 906.
[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[4] 21 Am Jur 2d, Criminal Law §§ 120, 130.

dant with the conspiracy must be presented for the statements to be admissible (MRE 801[d][2]).

2. CRIMINAL LAW — ARGUMENT OF COUNSEL — CURATIVE INSTRUCTIONS.

Reversible error does not result from failure to give cautionary instructions to the jury based on alleged improprieties in a prosecutor's closing argument where appropriate instructions would have cured any prejudice and instructions were not requested.

3. APPEAL — CRIMINAL LAW — CROSS-EXAMINATION — MISCARRIAGE OF JUSTICE — PRESERVING QUESTION.

A criminal conviction will be reversed on appeal because of improper cross-examination by the prosecution only when necessary to prevent a miscarriage of justice where defense counsel failed to object at trial to the improper questions.

4. CRIMINAL LAW — INDICTMENT AND INFORMATION — AIDER AND ABETTOR — PRINCIPAL — DUE PROCESS.

An aider and abettor may be indicted, tried and, on conviction, punished as a principal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Stephen M. Wheeler,* Principal Appellate Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: DANHOF, C.J., and R. B. BURNS and MACKENZIE, JJ.

DANHOF, C.J. Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, on September 1, 1978. On December 26, 1978, he was sentenced to life imprisonment. He appeals as of right.

Defendant was originally charged with first-degree murder on the theory that he aided and abetted his friend, Steve Massias, in a premeditated plot to kill Massias's ex-girlfriend, Karen "Katy" Taylor.

The testimony offered by the people at trial revolved around the actions of defendant, Steve Massias, and Larry Martin on March 7 and 8, 1978, as told by Larry Martin.[1] Defendant and Martin had lunch and dinner together on March 7, 1978. They went to Big Daddy's bar in Kalamazoo around 7 p.m. Steve Massias and Mark and Karl Waber joined them there. They drank and shot pool until approximately 9, when defendant drove them to a topless dancing establishment called "Club Zorba" on Massias's suggestion. Massias's ex-girlfriend Katy worked there as a dancer. They stayed for approximately one hour drinking and watching Katy dance. While at Club Zorba, Massias asked Martin for a gun. Martin refused. The five of them then returned to Big Daddy's, dropped off the Wabers, and proceeded to defendant's parents' house where defendant obtained a shotgun and shells for Massias. They drove to defendant's house where Massias test fired the shotgun. After defendant removed a jammed, spent shell casing, they returned to Club Zorba, drank more, played pool, and watched Katy dance. Martin, overcome by tiredness and liquor, went to the car. At some point defendant joined him. Massias waited in the bar until Katy called a taxicab, returned to the car, loaded the shotgun, and, while the car was parked within sight of the bar entrance, said, "If I don't get her here, we'll get her at her apartment". When the taxi pulled up in front of the bar, defendant drove the car in front of the taxi. Massias yelled directions and defendant backed the car around behind the taxi. When Katy and another woman came out of the bar at approximately 2 a.m., Massias fired three shots, killing Patricia Williams. As they sped off, Massias said,

---

[1] Martin was granted immunity in exchange for testifying.

"I shot the wrong fucking bitch". They went to defendant's house. Defendant returned the shotgun to his parents' house and they all slept until 7:30 the next morning. Defendant drove Martin to work the next day and then drove Massias to Chicago in his father's pick-up truck.

Defendant testified that Massias kept asking for a gun because Massias was afraid of some people from New Orleans. Defendant agreed to loan Massias his father's gun if given $300 as security. After the test firing, they went to Club Zorba to look for "Pete" who had Massias's money. He left the bar with Martin and waited in the car for one half hour. Defendant became sick and briefly left the car. When he returned, Massias was sitting in the front passenger seat holding the shotgun. Massias had indicated that he was afraid for Katy (referring to the people from New Orleans) and wanted to pick her up in order to protect her. Defendant drove up next to the taxi, then backed up to park behind the taxi because he was low on gas. When Katy came out, Massias shot at her. Defendant testified that he had no knowledge that Massias would shoot.

Defendant first argues that he was deprived of his right to confront the witnesses against him when the trial court, over objection, admitted alleged hearsay statements by finding a concert of action.

The people concede that the testimony was hearsay but argue that the court was correct in finding a concert of action.

The out-of-court statements of a declarant are admissible against a defendant if there exists a concert of action or conspiracy between defendant and the declarant and the statements are made while the common scheme or plan is still in effect.

See *People v Trilck,* 374 Mich 118; 132 NW2d 134 (1965), *People v Shepherd,* 63 Mich App 316, 322; 234 NW2d 502 (1975). Under MRE 801(d)(2), such statements are not hearsay at all. The statements are not admissible, however, unless there is evidence, independent of the statements, connecting the defendant with the conspiracy. *People v 68th Dist Judge,* 44 Mich App 553, 554; 205 NW2d 608 (1973). The Michigan Supreme Court has indicated that the independent evidence must prove a prima facie case of concert of action or conspiracy. *People v Stewart,* 397 Mich 1, 8-9; 242 NW2d 760 (1976), *modified* 400 Mich 540; 256 NW2d 31 (1977).

We hold that the statements were properly admitted against defendant because a prima facie case of concert of action was shown.

Defendant also argues that he was deprived of his right to a jury trial when the trial court made this ruling before the jury:

"THE COURT: Okay, gentlemen, based upon the case law as I understand the case law, this is—I've already ruled this concerted action has been established. I've also ruled it's a part of the res gestae as what happened to indicate up to and including the time of the murder. The objection is overruled. You may answer."

Defendant claims that the judge's comments made the jury's resolution of the two questions before the jury a foregone conclusion, *i.e.,* that murder was committed and that defendant aided and abetted Massias in committing it.

While we deplore comments such as these which could be given undue weight by the jury, we conclude that the comments, standing alone, do not require reversal. The trial court instructed the jury several times during the trial that its rulings

on evidence do not reflect any personal opinions and that the jury must not give them any weight.

Defendant next argues that he was deprived of his right to a fair trial when the prosecutor made misstatements of fact in his final argument to the jury:

"We indicate to you and submit that the evidence shows that Christopher Champion intended his actions. And you can infer intent because a shotgun was used. He got the weapon, the weapon was test fired and he unjammed the weapon, he positioned that car, he was lying in wait for someone to walk out of that Club Zorba and kill and it was malicious, there was malicious, there was malice involved, he created this high risk situation and if there isn't malice when then what is the testimony of Larry Martin which Missias says, *'We got the wrong fucking bitch'? Doesn't look like any kind of sadness to me, that's what the testimony is that Missias said."* (Emphasis added.)

Defendant correctly points out that Massias said *he* had shot the wrong woman, not "we".

After defendant's closing argument, the prosecutor argued:

"And he misses a critical part of Red Martin's testimony. You'll remember that when Red testified you were out in the hall, in the hall when he did it, there was some rulings and so some law when you came back Mr. Deryck asked Red, 'You didn't plot with anybody, did you?' 'No, I didn't.' 'Because you didn't hear anybody plot anything, you didn't hear anybody say we were going to get Katie?' 'Yeah, I did, I just don't remember who. Sure did.'"

Again, defendant correctly points out that Larry Martin denied hearing plotting of any kind.

Since defendant failed to object to the allegedly improper remarks, appellate review is precluded

unless it can be said that an objection and the appropriate curative instruction could not have eliminated the prejudice arising from the prosecutor's argument. *People v Hall,* 396 Mich 650, 655; 242 NW2d 377 (1976), *People v McLendon,* 51 Mich App 543, 547; 215 NW2d 742 (1974), *People v Humphreys,* 24 Mich App 411, 416; 180 NW2d 328 (1970). We believe that appropriate cautionary instructions, given on request, would have cured any error. Both challenged comments were misstatements of fact which could have been corrected by the trial court. Further, at the beginning of his argument, the prosecutor alerted the jurors to possible misstatements by counsel, telling them to rely on their own recollection. In addition, the trial court instructed the jury that arguments of counsel are not evidence and that they should disregard anything said which is not supported by the evidence.

Defendant also argues that he was deprived of his right to a fair trial by the prosecutor's cross-examination of defendant. Defendant claims that the prosecutor threw the skunk of suggestion into the jury box by incorporating unsubstantiated prejudicial statements into many of the questions asked of defendant.

It must first be noted that defense counsel did not object to the prosecutor's cross-examination. Thus, we will not reverse unless we find a miscarriage of justice. *People v Stoudemire,* 65 Mich App 664, 668; 238 NW2d 365 (1975), *People v Wilson,* 40 Mich App 290; 198 NW2d 424 (1972). We find no miscarriage of justice on these facts. The jury was properly instructed by the trial court that the questions which attorneys ask of witnesses are not evidence; only answers are evidence.

We have reviewed defendant's other allegations

of error and conclude that reversal is not required. The trial court did not abuse its discretion when it admitted three photographs of the deceased. See *People v Nard,* 78 Mich App 365; 260 NW2d 98 (1977). Under MRE 405(a), the people are allowed to inquire into specific instances of conduct on cross-examination where defendant offered testimony as to reputation. The claimed error in the trial court's instruction on first-degree murder is harmless because defendant was convicted of second-degree murder (the remedy for the alleged error would be a remand for entry of a second-degree murder conviction). See *People v Milton,* 81 Mich App 515; 265 NW2d 397 (1978), *modified* 403 Mich 821 (1978). The trial court's instructions on aiding and abetting, taken from the proposed Criminal Jury Instructions, were a clear and proper statement of the law. The jury was entitled to infer from the facts before them that defendant aided and abetted Massias in the homicide. Defendant's statements to the polygraph examiner were properly admitted for the purpose of impeachment. *People v Powell,* 76 Mich App 237; 256 NW2d 583 (1977). Finally, under Michigan law, defendant was properly charged as a principal; it is not required that he be charged as an aider and abettor. *People v Hooper,* 50 Mich App 186; 212 NW2d 786 (1973).

Affirmed.