PEOPLE v THOMAS

Docket No. 78-5256. Submitted December 4, 1979, at Lansing.—Decided March 17, 1980.

Defendant, Billie G. Thomas, was found guilty of first-degree murder but mentally ill in the Ingham Circuit Court, Michael G. Harrison, J. Prior to the preliminary examination defendant's counsel requested that the court adjourn the proceedings and refer the defendant to the Center for Forensic Psychiatry for evaluation as to whether he was competent to stand trial. The examining magistrate refused the request. In circuit court, the request was renewed and granted. Pursuant to the Center's recommendation, defendant was adjudged incompetent to stand trial but was later determined to be competent. The circuit court then denied defendant's request for a remand for a second or further preliminary examination. Trial was had during which the court disallowed the testimony of a doctor who examined defendant at the Center to be introduced on the issue of defendant's criminal responsibility at the time of the commission of the crime. The court also instructed the jury on the possibility of a verdict of guilty but mentally ill and the disposition of the defendant upon such a verdict. Defendant appeals. *Held:*

1. Where there is evidence of incompetency of the defendant prior to the preliminary examination, the examining magistrate should halt preliminary proceedings, refer the defendant to the Center for Forensic Psychiatry and, upon receipt of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 64.
[2] 21 Am Jur 2d, Criminal Law § 443.
[3] 21 Am Jur 2d, Criminal Law §§ 313, 318 *et seq.*
[4] 21 Am Jur 2d, Criminal Law §§ 48, 69
[5] 21 Am Jur 2d, Criminal Law § 66.
[6, 9] 75 Am Jur 2d, Trial §§ 738, 739.
[7] 5 Am Jur 2d, Appeal and Error §§ 938, 976.
[8] 21 Am Jur 2d, Criminal Law §§ 32, 63.
[10] 5 Am Jur 2d, Appeal and Error § 881.
[11] 29 Am Jur 2d, Evidence § 353 *et seq.*

Center's written report and recommendation, conduct a hearing and determine the issue of competency.

2. A statute imposes a duty on trial courts to instruct on the verdict of guilty but mentally ill where the evidence warrants it, and, in such a case, the court does not err in giving the appropriate criminal jury instructions even over the objection of defendant that the jury will be misled into returning a compromise verdict.

3. The fact that defendant has received no treatment since his confinement is not sufficient to warrant a reversal of his conviction.

4. The verdict of guilty of first-degree murder but mentally ill is not internally inconsistent; a person may be mentally ill and still be capable of forming the *mens rea* and premeditation for first-degree murder.

5. The decision of a trial court regarding the admissibility of evidence should not be disturbed unless clearly erroneous. A trial court's ruling, in a first-degree murder trial, that injection of the issue of competency into the proceeding, by introduction of the testimony of a doctor from the Center of Forensic Psychiatry who had evaluated defendant with regard to his competency to stand trial, would be a source of confusion to the jury on the issue of criminal responsibility was not clearly erroneous.

Affirmed.

1. CRIMINAL LAW — COMPETENCY TO STAND TRIAL — COURT RULES.

The issue of competency to stand trial may be raised at any time before trial, and, when raised, the trial court must address the issue (GCR 1963, 786).

2. CRIMINAL LAW — PRELIMINARY HEARING — JUDICIAL PROCEEDING — PROBABLE CAUSE — CRITICAL STAGE.

The preliminary hearing, in Michigan, is a judicial proceeding designed to establish probable cause that a crime has been committed and probable cause to believe that the accused committed it and is a critical stage of our criminal process.

3. CRIMINAL LAW — PRELIMINARY HEARING — RIGHT TO COUNSEL.

Counsel must be provided to represent an indigent defendant at the preliminary examination because the preliminary examination is considered to be a critical stage of a criminal proceeding.

4. CRIMINAL LAW — PRELIMINARY HEARING — COMPETENCY TO STAND TRIAL.

The examining magistrate should halt preliminary proceedings,

refer the defendant to the Center for Forensic Psychiatry and, upon receipt of the Center's written report and recommendation, conduct a hearing and determine the issue of competency where there is evidence of incompetency of the defendant prior to the preliminary examination and counsel for defendant requests a determination of competency to stand trial.

5. CRIMINAL LAW — COMPETENCY — PRELIMINARY HEARING — ASSISTANCE OF COUNSEL.

Denial of a defendant's motion for a determination of competency to stand trial made at a preliminary examination and denial of his motion for a remand for a second preliminary examination after he has been found competent to stand trial is not reversible error where the record fails to indicate that the defendant's incompetence was so severe that he was denied the effective assistance of counsel at the preliminary examination, even assuming that defendant is incompetent to stand trial at a preliminary examination.

6. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — INSTRUCTIONS TO JURY.

A statute imposes a duty on trial courts to instruct on the verdict of guilty but mentally ill where the evidence warrants it, and, in such a case, the court does not err in giving the appropriate Criminal Jury Instructions even over the objection of defendant that the jury will be misled into returning a compromise verdict (MCL 768.36; MSA 28.1059, CJI 7:8:01, 7:8:09).

7. CRIMINAL LAW — GUILTY BUT MENTALLY ILL — MENTAL ILLNESS — TREATMENT OF MENTAL ILLNESS.

The fact that a defendant, sentenced under the guilty but mentally ill statutes, has received no treatment since his confinement is not sufficient to warrant a reversal of his conviction.

8. HOMICIDE — GUILTY BUT MENTALLY ILL — FIRST-DEGREE MURDER.

The verdict of guilty but mentally ill of first-degree murder is not internally inconsistent; a person may be mentally ill and still be capable of forming the *mens rea* and premeditation for first-degree murder.

9. CRIMINAL LAW — INSTRUCTIONS TO JURY — DISPOSITION UPON VERDICT.

A trial court does not reversibly err in instructing the jury, at the prosecutor's request and even over defendant's objection, on the disposition of a defendant who is found not guilty by reason of insanity when there is conflicting evidence presented at trial regarding defendant's sanity and, therefore, the jurors

would not necessarily have believed that the defendant would be released at an early date.

10. APPEAL — EVIDENCE — ADMISSIBILITY OF EVIDENCE.
The decision of a trial court regarding the admissibility of evidence should not be disturbed unless clearly erroneous.

11. HOMICIDE — EVIDENCE — COMPETENCY — EXPERT TESTIMONY.
A trial court's ruling, in a first-degree murder trial, that injection of the issue of competency into the proceeding, by introduction of the testimony of a doctor from the Center for Forensic Psychiatry who had evaluated defendant with regard to his competency to stand trial, would be a source of confusion to the jury on the issue of criminal responsibility was not clearly erroneous.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, and *Michael G. Woodworth,* Chief Appellate Attorney, for the people.

*Hubbard, Fox, Thomas, White & Bengston,* for defendant.

Before: DANHOF, C.J., and BEASLEY and CYNAR, JJ.

BEASLEY, J. Defendant, Billie Gene Thomas, was convicted by a jury of first-degree murder but mentally ill.[1] After being sentenced to life imprisonment with eligibility for psychiatric treatment, if appropriate,[2] he appeals as of right, claiming there are seven issues.

On August 7, 1977, defendant's estranged wife, Dixie Mae Thomas, was shot to death. On August 23, 1977, defendant was arrested and charged with her premeditated murder.

Immediately prior to commencement of preliminary examination on September 7, 1977, counsel

---

[1] MCL 750.316; MSA 28.548, MCL 768.36; MSA 28.1059.
[2] MCL 768.36(3); MSA 28.1059(3).

for defendant moved to adjourn the preliminary examination and to refer defendant to the Center for Forensic Psychiatry for evaluation as to whether he was competent to stand trial. The district judge denied defendant's motion. After preliminary examination, defendant was bound over for trial for murder in the first degree, as charged. In circuit court, defendant renewed his motion regarding competency for trial and, on September 30, 1977, an order was entered referring defendant to the Center For Forensic Psychiatry. Pursuant to recommendations from the center, defendant was adjudicated incompetent to stand trial on December 23, 1977, but, subsequently, on September 13, 1978, was determined competent to stand trial. On the latter date, September 13, 1978, defendant moved to remand for a second or further preliminary examination, which motion was denied.

On appeal, defendant claims error occurred in the two rulings, (1) denial on September 7, 1977, by the district judge of his motion to be referred to the Forensic Psychiatry Center for evaluation as to competency, and (2) denial on September 13, 1978, by the circuit judge of his motion to remand to the district court for a further or second preliminary examination. He urges that these two rulings deprived him of a meaningful preliminary examination, of effective legal counsel at the preliminary examination and timely diagnostic evaluation by the Forensic Center of competency to stand trial.

The issue of competency to stand trial may be raised at any time before trial.[3] A defendant who is determined incompetent to stand trial may not

_____

[3] GCR 1963, 786. Under some circumstances, competency to stand trial may be raised during trial.

be proceeded against while incompetent.[4] When the issue of competency is raised, the trial court must address the issue.[5] When counsel for defendant moved for psychiatric evaluation prior to preliminary examination, the magistrate questioned his own authority to conduct a commitment hearing and order commitment. The cases are ambiguous on this proposition.[6]

In *People v Matheson,*[7] prior to the preliminary examination, by stipulation of the parties, the circuit court ordered defendant committed to the Forensic Center for a competency evaluation. No case law expressly addresses the issue of whether a magistrate, upon a showing that defendant may be incompetent to stand trial, may order a competency evaluation. The case law, applicable statutes and court rule speak of the *trial* court only.

In actual practice, a division of opinion exists as to whether a district judge has the power to make a finding of possible incompetency and a referral to the Forensic Center for evaluation and recommendation. Some district judges are making such referrals, and the Forensic Center is accepting such referrals and making evaluation and recommendation upon which district judges are conducting hearings and making determinations regarding competency for trial.

We find nothing in the statutes or case law expressly prohibiting referrals to the Forensic Center by a district judge. We believe that there is

---

[4] MCL 330.2022; MSA 14.800(1022).

[5] *People v Hamm,* 79 Mich App 281, 288; 261 NW2d 288 (1977).

[6] *People v Lucas,* 393 Mich 522; 227 NW2d 763 (1975), *People v Blocker,* 393 Mich 501; 227 NW2d 767 (1975), *People v Spry,* 74 Mich App 584; 254 NW2d 782 (1977), *People v Parney,* 74 Mich App 173; 253 NW2d 698 (1977), *People v Hamm, supra, People v Matheson,* 70 Mich App 172; 245 NW2d 551 (1976).

[7] *People v Matheson, supra.*

good reason for empowering the district judge to entertain the issue of competency for trial where the issue is raised. It tends to speed up the full criminal process by encouraging prompt, early referral to the Forensic Center where a situation demands it. Unless the district judge may make such a referral and determination, there is an inevitable delay in either awaiting a circuit court referral to the Forensic Center and subsequent determination of competency or in the district judge proceeding to hear such matters as may be before him at the risk of later reversal on the basis of incompetency to stand trial.

The prosecutor argues and the magistrate adopts the reasoning that the preliminary examination plays a limited role in the criminal justice system. In *People v Bellanca*,[8] the Michigan Supreme Court stated:

"In Michigan the preliminary hearing is a judicial proceeding designed to establish * * * that a crime has been committed and probable cause to believe the accused committed it. It is a critical stage of our criminal process."

As the preliminary examination is considered to be a "critical stage", counsel must be provided to represent an indigent defendant at the preliminary examination. Defendant argues that the inability to assist counsel in his defense because of his mental incompetence actually means that this defendant was not present at this critical stage of the criminal proceeding against him. While this is, perhaps, an unusual or exaggerated way to put it, the fact is that a defense to a criminal charge is sorely handicapped if defendant is unable to assist in his own defense.

---

[8] 386 Mich 708, 712; 194 NW2d 863 (1972).

Article 1, § 20 of the 1963 Michigan Constitution provides that:

"In every criminal prosecution, the accused shall have the right * * * to be confronted with the witnesses against him; * * * to have the assistance of counsel for his defense * * *."

The *Bellanca* Court read that provision as according a defendant the same assistance of counsel contemplated in the Sixth Amendment to the United States Constitution. That right was considered by the United States Supreme Court in *Coleman v Alabama*,[9] wherein the Court observed:

"Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail."[10]

To be truly effective in a practical sense (as distinguished from effective in the "constitutional minimum" sense), counsel must be properly pre-

[9] 399 US 1; 90 S Ct 1999; 26 L Ed 2d 387 (1970).
[10] 399 US 1, 9.

pared for cross-examination of the people's witnesses. This entails some minimal communication with the defendant.

On the other hand, this Court has recognized the narrow scope of the preliminary examination:

"The preliminary examination is a screening process to test the substance of the state's allegations against the accused as a basis for further proceedings against him. It is not a trial and should be as brief and to the point as the nature of the charge and the intricacies of the matter will permit, but not at the abuse of its two-fold purpose to determine whether or not the offense was committed and whether or not probable cause exists to believe that the defendant was guilty of the commission of that crime."[11]

However limited the scope of the preliminary examination is considered to be, the fact remains that it is a critical stage of the criminal proceeding. We, therefore, conclude that, where there is evidence of incompetency prior to the preliminary examination and counsel for defendant requests a determination of competency to stand trial, the examining magistrate should halt preliminary proceedings against a defendant and refer the defendant to the Center for Forensic Psychiatry for evaluation and recommendation. Upon receipt of the written report and recommendation, the district judge should conduct a hearing and make a determination of competency. Unless this procedure is followed, serious question may arise as to whether defendant's right to confront witnesses and assist in his or her own defense has been violated.

As the rule announced today applies to future

---

[11] *People ex rel Ingham County Prosecutor v East Lansing Municipal Judge*, 42 Mich App 32, 39; 201 NW2d 318 (1972).

preliminary examinations, we must determine whether, under the facts of this case, denial of defendant's motion prior to preliminary examination for determination of competency and/or denial of defendant's motion for a second, or supplemental, preliminary examination require reversal of the conviction and remand for further proceedings and a new trial. In making our determination, we must examine events subsequent to the preliminary examination and defendant's commitment. We conclude that, under these facts, any error that may have occurred was not of such a magnitude as to require reversing the conviction and remanding for a new trial.

The facts indicate that testimony was taken at the preliminary examination on September 7 and 8, 1977, and defendant was bound over on an open charge of murder. On September 30, 1977, the circuit court judge ordered defendant committed to the Center for Forensic Psychiatry for an evaluation of his competency to stand trial. On November 22, 1977, the center recommended an adjudication of incompetency and, on December 23, 1977, defendant was found incompetent to stand trial. We assume *arguendo* that defendant was incompetent at the preliminary examination in September.

Our review of the record at the preliminary examination fails to indicate that defendant's incompetence was so severe that he was denied the effective assistance of counsel. Defense counsel skillfully cross-examined witnesses, inquiring into a witness's consumption of alcohol the day of the killing and the lack of fingerprint evidence on a beer bottle found near the victim's window. He also probed into defendant's unusual behavior at the time of his arrest. Counsel tried to use some of the preliminary examination testimony for pur-

poses of impeachment at trial. All of the witnesses who testified at the preliminary examination also testified at trial, so counsel was able to recross-examine at a time when defendant was competent and able to assist in his defense. It would not appear that either delaying the preliminary examination, as initially sought, or granting a second preliminary examination, as subsequently sought, would have assisted defendant's defense or affected the outcome.

Thus, we do not find any prejudical error from denial of defendant's motion to delay the preliminary examination or for a second preliminary examination. Furthermore, defendant has not specifically alleged in what manner he has been harmed.[12] Upon this record, we conclude that defendant was not prejudiced in such a way as to require reversal for another trial.

Next, defendant launches a three-pronged attack on MCL 768.36; MSA 28.1059, the guilty but mentally ill statute. He first argues that the trial court erroneously instructed on the possible verdict, over objection, because the statute unconstitutionally confuses the jury in its resolution of the issue of criminal responsibility and encourages a compromise verdict. MCL 768.29a; MSA 28.1052(1), which guides us, provides in pertinent part:

"(2) At the conclusion of the trial, where warranted by the evidence, the charge to the jury shall contain instructions that it shall consider separately the issues of the presence or absence of mental illness and the presence or absence of legal insanity and shall also contain instructions as to the verdicts of guilty, guilty but mentally ill, not guilty by reason of insanity, and

---

[12] See, *People v Eddington,* 77 Mich App 177, 190; 258 NW2d 183 (1977).

not guilty with regard to the offense or offenses charged and, as required by law, any lesser included offenses."

The trial court complied with the language of the statute by giving proposed Criminal Jury Instruction 7:8:01 and proposed Criminal Jury Instruction 7:8:09. Defense counsel objected both before and after the giving of the instructions. One panel of this Court raised, but did not resolve, the question of whether such instruction can be omitted at defendant's request.[13] The language of the statute imposes a duty on trial judges to use this instruction where the evidence warrants it. While trained professionals may better understand the distinction between a not guilty by reason of insanity verdict and a guilty but mentally ill verdict, MCL 768.36; MSA 28.1059 offers sufficient guidance in this respect. We, further, do not find evidence of the jury being misled into returning a compromise verdict or of being improperly instructed.

Defendant next attacks MCL 768.36(3); MSA 28.1059(3), claiming that he has received no treatment since his confinement. *People v McLeod*[14] indicates that this argument does not warrant reversal.

Defendant's final attack on the guilty but mentally ill statute is based on a claim that it would be inconsistent to have a verdict of guilty but mentally ill where one is convicted of first-degree murder. Defendant argues that a person who is found to have a mental disorder would be incapable of forming the requisite intent for a premeditated killing. We are guided by this Court's holding in *People v Bruce Ramsey*.[15] The panel in

---

[13] *People v Mikulin,* 84 Mich App 705, 709; 270 NW2d 500 (1978).

[14] 77 Mich App 327; 258 NW2d 214 (1977), *lv gtd* 402 Mich 927 (1978).

[15] 89 Mich App 468, 471-472; 280 NW2d 565 (1979).

*Ramsey* addressed the question of whether a mentally ill person was able to form the *mens rea* for second-degree murder. The Court found that mental illness and malice aforethought are not mutually exclusive mental conditions. We agree that a finding of mental illness does not necessitate a finding of not guilty of premeditated murder.

Defendant next claims the trial court erred when, at the prosecution's request and over defendant's objection, the jury was instructed on the disposition of a defendant who is found not guilty by reason of insanity. Defendant argues that the court's instruction, coupled with a Forensic Center employee's testimony that defendant was neither mentally ill nor insane, necessarily informed the jury that defendant would be released within 60 days.

In *People v Cole,*[16] the Michigan Supreme Court adopted the rule of *Lyles v United States*[17] and held that when an insanity defense is fairly raised, a trial court must instruct, when requested by defendant or by the jury, on the disposition of a defendant found not guilty by reason of insanity. The *Cole* Court did not address the question of whether such an instruction could be given *sua sponte* or at the prosecution's request.

However, in revisiting the *Coles-Lyles* doctrine, a panel of this Court has held that a *sua sponte* instruction is error.[18] It can be argued that the same rationale for finding a *sua sponte* instruction error would also apply to an instruction request by the prosecutor where defendant objects. The *Samu-*

---

[16] 382 Mich 695, 720-721; 172 NW2d 354 (1969).

[17] 103 US App DC 22; 254 F2d 725 (1957).

[18] *People v Samuelson,* 75 Mich App 228, 232-234; 254 NW2d 849 (1977). Also see, *People v Staggs,* 85 Mich App 304; 271 NW2d 211 (1978). Both cases were decided after the new Mental Health Code became effective on August 6, 1975. See, MCL 330.2050; MSA 14.800(1050) and MCL 330.2102; MSA 14.800(1102).

*elson* Court[19] found that, by implication, such an instruction would be error but then proceeded to reason it was not reversible error because it was helpful to defendant's claim of insanity.[20]

In this connection, there is much to be said for adopting a truth and accuracy test as a measure of the correctness of a trial judge's instruction regarding the effect of a not guilty by reason of insanity verdict or a guilty but mentally ill verdict. It is just as wrong and erroneous to mislead a jury into believing there is *no* public safety factor in either of those verdicts because a defendant will *not* be released until it is *certain* that he will not commit further violent crime as it is to mislead a jury into believing a defendant will automatically be released from a mental hospital within a very short time after either of these verdicts. The argument for the truth and accuracy of the jury instruction test rests on the practical assumption that under our adversary system the prosecutor and the defense counsel will each indirectly and obliquely seek to persuade the jury of their respective, differing versions of what happens after a not guilty by reason of insanity verdict or a guilty but mentally ill verdict and that the best way to combat these efforts is by telling the jury what the law provides. Leaving the question of whether or not to give this jury instruction to the whim of the defendant imparts a kind of judicial gamesmanship to the trial. Confidence in the jury should override the fear that somehow knowledge of what happens to a defendant in the case of a not guilty by reason of insanity or a guilty but mentally ill verdict will result in an unjust verdict.

Nevertheless, as in *Samuelson* and in *People v*

---

[19] *People v Samuelson, supra.*

[20] *People v Samuelson, supra,* 234.

*Staggs*,[21] we do not find that upon this record reversal is warranted. Although one expert testified that defendant was not insane, another expert disagreed with this analysis. The jurors would not necessarily have believed that defendant would be released at an early date. Even if we were to assume this was error, we would not find it so prejudicial as to require reversal.

Defendant's next assignment of error relates to the trial court's refusal to grant defense counsel's motion to adjourn the trial date. We do not find an abuse of the trial court's discretion, and find this issue to be without merit.[22]

We must next determine whether the trial court erred in excluding the testimony of Dr. William Yarroch from the Center for Forensic Psychiatry, who had evaluated defendant on his competency to stand trial. Defendant sought to introduce the testimony on the issue of defendant's criminal responsibility at the time of the commission of the crime. In reviewing questions regarding the admissibility of evidence, the decision of the trial court is not to be disturbed unless clearly erroneous.[23] Although such evidence would be admissible under MCL 330.2028(3); MSA 14.800(1028)(3), subject to the trial court's discretion, we do not view the trial court's ruling, that injection of the issue of defendant's competency into the proceedings would be a source of confusion to the jury on the issue of criminal responsibility, to be clearly erroneous.

We also find no error in admitting the testimony of Dr. Harley Stock, a psychologist at the Center

[21] *People v Samuelson, supra, People v Staggs, supra.*

[22] See, *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972).

[23] *People v McKinney,* 65 Mich App 131, 141; 237 NW2d 215 (1975).

for Forensic Psychiatry, where the court ruled that Dr. Stock could only testify as to background information and that such testimony would not apprise the jury of a prior competency hearing.[24]

Finally, defendant contends that the trial court's instruction on lying-in-wait impermissibly advised the jury that intent to kill could be presumed. There was no objection to the trial court's instruction. We have reviewed the instruction and do not find that the trial judge equated the two concepts; rather, the court explained when intent may be presumed from lying-in-wait. We find no error.

Having reviewed the errors which defendant claims occurred at the preliminary examination and at trial and finding none warranting reversal of defendant's conviction, we affirm.

Affirmed.

---

[24] MCL 330.2028(3); MSA 14.800(1028)(3).