PEOPLE v RONE (ON SECOND REMAND)

Docket No. 58436. Submitted June 25, 1981, at Lansing.—Decided
September 22, 1981. Leave to appeal applied for.

Junior C. Rone was convicted of second-degree murder, three
counts of assault with intent to commit murder, and four
counts of possession of a firearm during the commission of a
felony, Detroit Recorder's Court, Michael J. Connor, J. He
appealed in the Court of Appeals, which affirmed his convic-
tions. He then sought leave to appeal in the Supreme Court
which, in lieu of granting leave and while retaining jurisdic-
tion, remanded the case to the Court of Appeals for considera-
tion of the issue of whether the trial court's instruction, *sua
sponte,* concerning the procedures to be followed following a
verdict of not guilty by reason of insanity constituted error and
for amplification of the reasons for its decision, 409 Mich 903
(1980). On remand, the Court of Appeals complied with the
Supreme Court's order of remand and again affirmed the
defendant's convictions, 101 Mich App 811 (1980). The Supreme
Court then reconsidered the defendant's petition together with
the Court of Appeals amplified decision and vacated that deci-
sion and again remanded the case to the Court of Appeals

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 688.
   75 Am Jur 2d, Trial § 35.
[2] 75 Am Jur 2d, Trial §§ 713, 738.
   Instructions in criminal case in which defendant pleads insanity as
   to his hospital confinement in event of acquittal. 11 ALR3d 737.
[3] 21 Am Jur 2d, Criminal Law § 277.
[4] 75 Am Jur 2d, Trial §§ 744, 752.
[5] 5 Am Jur 2d, Appeal and Error § 623.
[6] 5 Am Jur 2d, Appeal and Error § 627.
[7] 21 Am Jur 2d, Criminal Law § 81.
[8] 21A Am Jur 2d, Criminal Law §§ 749, 752, 985.
   Incompetency of counsel by accused as affecting validity of convic-
   tion. 74 ALR2d 1390.
   Modern status of rules and standards in state courts as to adequacy
   of defense counsel's representation of criminal client. 2 ALR4th
   27.

because a full panel of that Court had not considered the case on remand, 411 Mich 984 (1981). *Held:*

1. The denial by the Court of Appeals of the defendant's motion for an extension of time to file his appellate brief did not violate his right to due process. The motion was not made within the period prescribed by court rules for the filing of appellate briefs, and the defendant failed to show cause why the extension should be granted.

2. The trial court properly instructed the jury regarding the post-trial effect of a verdict of not guilty by reason of insanity.

3. The defendant's convictions for possession of firearms during the commissions of felonies did not violate his right against being placed twice in jeopardy.

4. The trial court's failure to instruct the jury, *sua sponte,* on the defense of intoxication was proper.

5. The trial court properly instructed the jury in preparation for expert psychiatric testimony.

6. The defendant failed to object in the trial court to remarks made by the prosecutor during closing argument precluding appellate review, no showing having been made that a curative instruction would not have eliminated the claimed prejudice.

7. The statutory provision permitting a verdict of guilty but mentally ill did not deny the defendant his rights to due process or the equal protection of law.

8. The defendant was not denied effective assistance of counsel.

Affirmed.

1. APPEAL — EXTENSION OF FILING DEADLINES — DUE PROCESS — COURT RULES.

A denial by the Court of Appeals of a defendant's motion for additional time to file an appellate brief does not constitute a denial of due process where the motion is not made within the period prescribed by the court rules for the filing of the brief and no cause is shown as to why an extension should be granted (GCR 1963, 815.1[1]).

2. CRIMINAL LAW — JURY INSTRUCTIONS — INSANITY — STATUTES.

A trial court must instruct a jury on all elements of a charged crime, whether requested by the parties or not; such instructions must make understandable to the jury the legal concepts which they are to apply, and to insure the jury's fair consideration of all possible verdicts brought into issue the trial court should have independent authority to instruct on the disposition of a defendant found to be insane; thus, the trial court

may instruct the jury, *sua sponte,* regarding the post-trial effect of verdicts of not guilty by reason of insanity and guilty, but mentally ill (MCL 768.29; MSA 28.1052).

3. Criminal Law — Felony-Firearm — Double Jeopardy — Statutes.

A conviction for possession of a firearm during the commission of a felony and a separate conviction of a felony involving the use of a firearm does not violate the constitutional guarantee against being placed twice in jeopardy where each of the statutes proscribing the criminal acts requires proof of a fact which the other does not (US Const, Am V; Const 1963, art 1, § 15; MCL 750.227b; MSA 28.424[2]).

4. Criminal Law — Jury Instructions — Defenses — Intoxication — Insanity — Hearsay.

A trial court need not instruct the jury, *sua sponte,* on the defense of intoxication where the only testimony on that issue is given by an expert witness in support of an insanity defense and the evidence as direct evidence would be inadmissible as hearsay.

5. Criminal Law — Appeal — Jury Instructions — Preserving Question.

Failure by a criminal defendant to request a jury instruction on the defense of intoxication precludes review on appeal of the issue of the failure of the trial court to give the instruction absent manifest injustice.

6. Criminal Law — Closing Argument — Preserving Question — Jury Instructions.

Failure by a criminal defendant to object to remarks made by a prosecutor during closing argument precludes review on appeal unless a curative instruction would not have eliminated the claimed prejudice.

7. Criminal Law — Defenses — Insanity — Guilty but Mentally Ill — Due Process — Equal Protection — Statutes.

The statutory provision permitting a finding of guilty but mentally ill upon the assertion by a defendant of an insanity defense does not violate the defendant's rights to due process and equal protection of law (MCL 768.36; MSA 28.1059).

8. Criminal Law — Effective Assistance of Counsel — Trial Strategy.

A decision by trial counsel which is part of his trial strategy, even where the strategy fails, of itself does not deny a defen-

dant effective assistance of counsel where counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law and the mistake was not so serious that but for it the defendant would have had a reasonably likely chance for acquittal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Strefling & Brode, P.C.,* for defendant on appeal.

ON SECOND REMAND

Before: M. F. CAVANAGH, P.J., and M. J. KELLY and D. S. DeWITT,* JJ.

M. J. KELLY, J. On April 19, 1978, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, three counts of assault with intent to commit murder, MCL 750.83; MSA 28.278, and four counts of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced under the indeterminate sentencing act, MCL 769.8 *et seq.;* MSA 28.1080 *et seq.,* to life imprisonment on the second-degree murder count and to a prison term of from 10 to 30 years for each count of assault with intent to murder. He also received a mandatory two-year prison term for each of the four felony-firearm counts. Defendant's subsequent appeal of right to this Court resulted in an unpublished memorandum opinion affirming each of the convictions. *People v Rone,* Docket No. 78-2461, released December 12, 1979. The decision was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

remanded to this Court on order of the Supreme Court, for "amplification of the reasons for its decision". 409 Mich 903 (1980). We were also directed to consider "whether the trial court's unrequested instructions concerning the procedures to be followed after a verdict of not guilty by reason of insanity constituted error" under *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969). Pursuant to the Supreme Court's order, the Court issued a second opinion amplifying the reasons for our decision and considering the trial court's unrequested instruction. 101 Mich App 811; 300 NW2d 705 (1980). However, the second decision is now remanded to this Court on order of the Supreme Court because only two judges of the original panel considered the case during the first remand. 411 Mich 984; 308 NW2d 97 (1981).

On September 2, 1977, defendant, while armed with a .22-caliber semi-automatic rifle, entered the Band Drug Store in the City of Detroit. He was looking for the manager when, suddenly and without apparent provocation, he shot the pharmacist, Allen Margolis. Defendant then exited from the store, whereupon he encountered Mary and Robert Rish. He then asked Miss Rish if Robert was her "old man" and proceeded to shoot Robert in the side of the head.

Shortly after the above shootings, Detroit police officer James Lawless observed the defendant in the neighborhood carrying a rifle. When Lawless identified himself as a police officer, the defendant began shooting at him as well. Defendant then retreated into a nearby house where he was arrested. A subsequent search of the defendant's home disclosed the body of Mary Stevens, with whom the defendant had been living. Miss Stevens was later found to have been shot three times with a .22-caliber rifle.

During trial, the defense presented the testimony of Dr. Norman G. Pothyress, a clinical psychologist, in support of its proposed defense of insanity. Dr. Pothyress opined that the defendant was mentally ill at the time of the shootings. He also suggested that defendant had likely consumed a considerable amount of alcohol both on the day of and the day before the shootings.

Defendant first contests as a violation of due process this Court's denial of his motion for additional time to file an appellate brief. Defendant specifically alleges that this denial violated his due process right to effective oral arguments on appeal. On October 5, 1978, the defendant was provided with substitute appellate counsel, after the 60-day period for filing briefs provided in GCR 1963, 815.1(1) had expired. On October 19, 1978, defense counsel petitioned this Court for an additional 60 days to file his brief. We granted a 20-day extension in an order dated November 6, 1978.

This Court's authority to permit the filing of an appellant's brief more than 90 days after a claim of appeal or transcript is filed is governed by GCR 1963, 815.1(1). Under this rule, additional time may be ordered "for cause shown". We hold that no error was committed. Defendant's appellate brief was not in fact filed until February 26, 1979, three months after expiration of the original 20-day extension. Further, arguments were not scheduled on defendant's case until October, 1979; counsel made no motion for oral argument although the case call specifically noted the time requirements for filing motions and that "all attorneys not endorsed must move for oral argument". This allegation of error is not only meritless but specious.

Defendant next alleges as reversible error the

trial court's decision, *sua sponte,* to instruct the jury on the post-trial effect of a verdict of not guilty by reason of insanity. The trial judge instructed as follows:

"If you make such decision, the defendant will be immediately committed to the custody of the center for forensic psychiatry for a period not to exceed sixty days. During that time the statute directs that the center thoroughly examine and evaluate the present mental condition of the defendant in order to reach an opinion as to whether he is mentally ill and requires medical treatment.

"Within the sixty day period, the center will file a report with the court, prosecuting attorney and defense counsel. If the report states that the person is not mentally ill or does not require treatment, the defendant shall be discharged from custody. If the report finds that the person is mentally ill and does require treatment, the court may direct the prosecuting attorney to file a petition with the probate court for an order of hospitalization or an order of admission to a clinical facility.

"If the court so directs the center may retain the person pending such a hearing. If after a hearing before a probate court, the defendant is found not to be mentally ill or not to be a person requiring treatment, the defendant shall be discharged. However, if the person is ordered hospitalized, admitted to a facility or otherwise (to) receive treatment he shall not be discharged or placed on leave without prior consultation with the center for forensic psychiatry.

"If hospitalized, the defendant will be hospitalized until his mental condition is such that he is no longer judged to require treatment."

In *Cole, supra,* the Supreme Court considered as a matter of first impression the question whether a jury should be apprised of the consequences of returning a verdict of not guilty by reason of

insanity.[1] The Court concluded in favor of the instruction, when requested by the defendant or jury. In so holding, the *Cole* Court adopted the rationale supporting the instruction expressed in *Lyles v United States,* 103 US App DC 22, 25; 254 F2d 725 (1957):

" 'This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955 [69 Stat 710, DC Code § 24-301 (1951) (Supp 5)]. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.' " *Cole, supra,* 719-720.

Accord, *People v Hampton,* 384 Mich 669, 674-676; 187 NW2d 404 (1971), *People v Gray,* 57 Mich App

---

[1] Unlike the present case, the Supreme Court in *Cole* did not have before it the issue of an unrequested instruction. Nor did the Court endeavor to address the issue.

289, 297; 225 NW2d 733 (1975). See also *People v Ashford,* 91 Mich App 693; 283 NW2d 830 (1979), in which the Court found no manifest injustice arising from the trial court's unobjected-to decision to instruct the jury, *sua sponte,* in this manner.

Two subsequent cases in this Court have considered the specific allegation of error raised by defendant. In *People v Samuelson,* 75 Mich App 228; 254 NW2d 849 (1977), the Court interpreted the *Cole* reference to a request by the jury or defense counsel as impliedly prohibiting a *sua sponte* disposition instruction. The *Samuelson* Court did not, however, find the lower court's unrequested instruction to be reversible error. It concluded that the *Cole* "automatic commitment charge" mistakenly given by the trial court under MCL 767.27b; MSA 28.966(12), since repealed, 1974 PA 258, was more helpful to defendant's insanity defense than a disposition instruction under the then recently enacted Mental Health Code, MCL 330.2050; MSA 14.800(1050).[2]

The more recent decision in *People v Tenbrink,* 93 Mich App 326; 287 NW2d 223 (1979), *lv den* 408 Mich 945 (1980), offers a differing analysis. The *Tenbrink* Court quoted the following additional language from *Lyles, supra,* 25-26:

" 'Sometimes a defendant may not want such an instruction given. If that appears affirmatively on the record we would not regard failure to give it as grounds for reversal. Otherwise, whenever hereafter the defense of insanity is fairly raised, the trial judge shall instruct

---

[2] The latter provision establishes a required period of forensic center commitment not to exceed 60 days, during which the defendant is to undergo tests and examinations to determine his continuing mental condition. MCL 330.2050(1); MSA 14.800(1050)(1). A report on the defendant's mental health then is required to be prepared and submitted to the court, which may direct the prosecutor to prepare a petition seeking a more permanent commitment and course of treatment. MCL 330.2050(2), (3); MSA 14.800(1050)(2), (3).

the jury as to the legal meaning of a verdict of not guilty by reason of insanity in accordance with the view expressed in this opinion.' " *Tenbrink, supra,* 330.

The *Tenbrink* Court then reasoned that in *Cole* the Supreme Court adopted the *entire* rationale offered in *Lyles,* including the requirement of a disposition instruction for insanity defenses. The Court also rejected the argument that the new Mental Health Code's disposition procedures would alter its finding:

"Nor do we feel that the change in the law relative to the possible disposition of one found 'not guilty by reason of insanity' requires a different result. While the *Lyles* rule related to an automatic commitment statute similar to Michigan's when *Cole* was decided, the District of Columbia code was amended in 1970 to require a sanity hearing within 50 days. This is similar to the new Michigan mental health code in effect at the time of trial in the case at bar. In *United States v Brawner,* 153 US App DC 1, 28-30; 474 F2d 969 (1972), the Court reconsidered the *Lyles* change and held that the instruction should be revised to conform with the statute as amended. The instructions in the instant case conformed with Michigan's new law. On the basis of *Lyles, Brawner* and *Cole* we find no reversible error in the *sua sponte* instructions of the trial court relative to possible dispositions of the defendant if he were found 'not guilty by reason of insanity' or 'guilty but mentally ill'." *Tenbrink, supra,* 330-331.

We agree with the result reached in *Tenbrink,* but subscribe to a different approach.

Basic to the function of a trial court is its duty to instruct a jury on all elements of a charged crime, whether requested by the parties or not. MCL 768.29; MSA 28.1052, *Ashford, supra.* Imposition of this duty is intended to secure the defendant's right to a jury trial, which includes the

right to a properly instructed jury. *People v Lewis,*
91 Mich App 542; 283 NW2d 790 (1979). Central to
this requirement is the necessity that instructions
make understandable to a jury the legal concepts
they are to apply. As explained in *People v Lam-*
*bert,* 395 Mich 296, 304; 235 NW2d 338 (1975):

> "[J]uries cannot be allowed to speculate. It is the
> function of the court to inform the jury of the law by
> which its verdict must be controlled. The purpose of
> instructions is to enable the jury to understand and
> apply the law to the facts of the case. The accused has a
> right to have a jury pass upon the evidence under
> proper instructions." (Footnote omitted.)

As noted in *Cole* and *Lyles,* the basis for instruct-
ing a jury on the consequences of a not guilty by
reason of insanity verdict is the judicial recogni-
tion that jurors do not generally understand the
results of such a decision. Thus, to find error in
the lower court's instruction would run contrary to
the rationale approved in *Cole.*[3] To insure a jury's

[3] We note with approval the following discussion in *People v*
*Thomas,* 96 Mich App 210, 223; 292 NW2d 523 (1980), a case in which
the trial court gave a disposition instruction over defense counsel's
objection:

"In this connection, there is much to be said for adopting a truth
and accuracy test as a measure of the correctness of a trial judge's
instruction regarding the effect of a not guilty by reason of insanity
verdict or a guilty but mentally ill verdict. It is just as wrong and
erroneous to mislead a jury into believing there is *no* public safety
factor in either of those verdicts because a defendant will *not* be
released until it is *certain* that he will not commit further violent
crime as it is to mislead a jury into believing a defendant will
automatically be released from a mental hospital within a very short
time after either of these verdicts. The argument for the truth and
accuracy of the jury instruction test rests on the practical assumption
that under our adversary system the prosecutor and the defense
counsel will each indirectly and obliquely seek to persuade the jury of
their respective, differing versions of what happens after a not guilty
by reason of insanity verdict or a guilty but mentally ill verdict and
that the best way to combat these efforts is by telling the jury what
the law provides. Leaving the question of whether or not to give this
jury instruction to the whim of the defendant imparts a kind of

fair consideration of all possible verdicts brought into issue, a trial court should have independent authority to instruct on the disposition of a defendant found insane. We therefore conclude that a trial judge may instruct a jury, *sua sponte,* as to the post-trial effect of a not guilty by reason of insanity verdict.

Defendant next alleges a violation of his constitutional right to be free of double jeopardy, US Const, Am V; Const 1963, art 1, § 15, arising from his separate conviction for possessing a firearm during the commission of a felony. Under the authority of the decision of *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), it is determined that defendant's convictions did not violate the constitutional prohibition against double jeopardy.

The fourth issue raised by defendant concerns the trial court's failure to instruct the jury, *sua sponte,* on the defense of intoxication. In *People v Reed,* 393 Mich 343, 349-350; 224 NW2d 867 (1975), the Supreme Court summarized the duties of a trial court to instruct its jury properly. If supported by the evidence, a trial judge must include instructions on any theories or defenses raised. See also *People v Hoskins,* 403 Mich 95, 100; 267 NW2d 417 (1978). In this case, the sole reference to intoxication was that made by the defendant's expert psychiatric witness who, based upon conversations he had with the defendant and several witnesses, suggested that the defendant had been drinking heavily on the day of the incident. We note, however, the hearsay nature of this testimony, offered solely in support of defendant's

judicial gamesmanship to the trial. Confidence in the jury should override the fear that somehow knowledge of what happens to a defendant in the case of a not guilty by reason of insanity or a guilty but mentally ill verdict will result in an unjust verdict."

claim of insanity. Had the expert attempted to establish by direct testimony a defense claim of intoxication, such evidence would have been inadmissible as hearsay. Absent additional evidence supporting a finding that defendant was intoxicated, the trial judge was not required to instruct the jury, *sua sponte,* as to the possible mitigating effect of intoxication.

We also note the defendant's failure to request an intoxication instruction. Absent such a request, this Court will not reverse unless manifest injustice would thereby result. *People v Crawford,* 89 Mich App 30, 36; 279 NW2d 560 (1979). Our review of this issue discloses no such manifest injustice.

Defendant asserts error arising from the trial court's instructions in preparing the jury for expert psychiatric testimony on the defense of insanity. *People v Mikulin,* 84 Mich App 705; 270 NW2d 500 (1978). However, our review of the trial court indicates instructions in substantial compliance with CJI 7:8:01 as required by *Mikulin.* Thus, no reversible error was suffered by the defendant.

Defendant next asserts that the prosecutor's closing argument contained remarks prejudicial to the defendant's case. Specifically, he complains of the following statements made during rebuttal:

"But, is that to say that they are immune from criminal prosecution, because the acts which they committed upon their fellow men and women were so reprehensible? The law was not intended to unbridle the passions of men and women, to allow them to go through the world and murder, kill and plunder and then assert that they did that as the result of a mental defect."

\* \* \*

"Now are we to let people go about consuming large

volumes of alcohol and then go out on the streets and shoot, kill and maim and murder and come in and say, 'Ah, I had some mental problems.'?"

\* \* \*

"I hope that that is a verdict that you are able to live with today, tomorrow, next week and as long as you are here on this good earth."

Defense counsel raised no objection to these remarks. Such failure to object precludes appellate review unless it can be said that a timely requested curative instruction would not have eliminated the claimed prejudice, *People v Champion,* 97 Mich App 25; 293 NW2d 715 (1980), or that the comments denied defendant his right to a fair trial. *People v Thangavelu,* 96 Mich App 442; 292 NW2d 227 (1980). The prosecutor's remarks were not so inflammatory that curative instructions would be unable to eradicate the claimed prejudice. *E.g., People v Lewis,* 37 Mich App 548; 195 NW2d 30 (1972). Nor did the remarks make reference to matters not in evidence. *Thangavelu, supra.* Finally, review of the prosecutor's closing statement in its entirety shows no manifest prejudice accrued to the defendant. His argument did not suggest a "civic duty" to convict or disparagement of the defense of insanity. Had defense counsel entered objections to the prosecutor's remarks, the trial court's curative instructions could have erased any prejudice to defendant.

Defendant next argues that the guilty but mentally ill statute, MCL 768.36; MSA 28.1059, under which the jury was instructed denied to the defendant his constitutional rights to due process and equal protection of the law. His due process argument rests upon the allegation that the psychiatric treatment statutorily mandated will not, in fact, be provided. Defendant's equal protection argu-

ment alleges that the law creates an irrational classification between defendants found guilty but mentally ill and those found not guilty by reason of insanity. Each of these arguments was addressed, and dismissed, however, in *People v McLeod,* 407 Mich 632; 288 NW2d 909 (1980). We thus find no merit in defendant's constitutional arguments.

Defendant lastly contends that he was denied the effective assistance of counsel when his attorney: (1) failed to request an instruction on intoxication as a theory of defense, (2) failed to object to the previously noted prosecutorial comments during closing argument, and (3) failed to seek dismissal of the second-degree murder charge or request an instruction on manslaughter.

In *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), the Supreme Court adopted the standard for effective assistance articulated in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974), requiring defense counsel to " 'perform at least as well as a lawyer with ordinary training and skill in the criminal law * * *' ". The *Garcia* Court also approved this Court's decision in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), finding that a "serious mistake" but for which defendant would have had a reasonably likely chance of acquittal could constitute grounds for a valid claim of ineffective assistance. We shall discuss the individual bases claimed by defendant to constitute ineffective assistance *seriatim.*

The defense of intoxication is of limited utility, except where the charged offense(s) require(s) a specific intent for its (their) commission. In *People v Crittle,* 390 Mich 367, 371; 212 NW2d 196 (1973), the Supreme Court quoted its previous opinion in *People v Walker,* 38 Mich 156, 158 (1878), for the effect of an intoxication defense:

" 'While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass; but it consists in the wrongful taking with felonious intent; and if the defendant for any reason whatever, indulged no such intent, the crime cannot have been committed.' "

See also *People v Stanton,* 97 Mich App 453; 296 NW2d 70 (1980). Thus, had defense counsel raised as a defense the alleged intoxication of the defendant, such defense would necessarily have been limited to the assault with intent to commit murder charges.[4]

Despite the availability of intoxication as a defense to the assault charges, we find the defendant's argument unavailing. From the record there was little evidence of intoxication. Moreover, defense counsel was likely aware that such an instruction would not be a defense to the second-degree murder or felony-firearm charges. It appears that defense counsel merely chose to emphasize the insanity defense rather than distract the jury with another defense which might appear to be flimsy. This decision by counsel was part of his trial strategy. The fact that the strategy failed does not mean that counsel was ineffective.

We have already determined that no prejudice was imposed upon the defendant by the prosecutor's remarks during closing arguments. Defen-

[4] See *People v Taylor,* 98 Mich App 685; 296 NW2d 631 (1980), rejecting the defendant's argument that intoxication is a defense to second-degree murder, an offense not requiring specific intent to kill. See also *Wayne County Prosecutor, supra,* 396-398, in which the Supreme Court discussed the elements required to prove a violation of the felony-firearm statute but did not find specific intent necessary. But see *People v Fields,* 64 Mich App 166; 235 NW2d 95 (1975), holding assault with intent to commit murder to be a specific intent crime.

dant's claim of ineffective assistance of counsel for failure to object to such remarks is thus without merit. As every trial lawyer knows, objections often underscore points made by the opposition.

The final rationale proposed in support of defendant's claim of ineffective assistance is defense counsel's failure to move for dismissal of the second-degree murder charge or for instructions on the lesser included offense of manslaughter. We disagree. The evidence presented at trial as to second-degree murder was more than adequate to withstand a motion for directed verdict of acquittal. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979). Further, defense counsel's failure to request instructions on manslaughter could be a matter of trial strategy. In effect, by not requesting such instructions defense counsel may have attempted to force the jury into an "all or nothing" decision. Defendant was not deprived of his constitutional right to the effective assistance of counsel.

Affirmed.